NELLIE M. CALLAHAN *vs.* BROADWAY NATIONAL BANK OF
CHELSEA.

Suffolk.    October 3, 1933. — May 26, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Landlord and Tenant,* Construction of lease, Taxes.  *Contract,* Implied.
*Equity Jurisdiction,* Construction of instrument in writing, Declara-
tory judgment, Adequate remedy at law.  *Equity Pleading and
Practice,* Amendment, Decree, Appeal.

Where a bank, which was lessee of the first floor and basement of a
    building, pursuant to the lease installed a vault in the basement and
    grille work and other fixtures to adapt the leased premises for use in
    its business, and it was apparent from the terms of the lease that
    during its term the vault and other fixtures were to remain the
    property of the bank as between it and the lessor, the words, "any
    tax or assessment on said property," in a provision of the lease that
    "should said lessor at any time fail or neglect to pay any tax or assess-
    ment on said property . . . said lessee may, at its option, do what
    said lessor may then be obligated to do . . . and may deduct the
    sums expended in connection therewith from the rent falling due to
    said lessor hereunder," referred solely to the land and building and
    did not include such vault and other fixtures nor require the lessor
    to pay the taxes thereon, even though, for purposes of taxation, they
    properly could be assessed to the lessor with the land and building
    under G. L. (Ter. Ed.) c. 59, § 3.
Such an assessment having been made to the lessor, and he having paid
    the whole tax, he was entitled to recover from the bank the portion
    of the tax which pertained to such vault and other fixtures.
A suit in equity by the lessor in a lease against the lessee was for reforma-
    tion of the lease.  At the hearing of the suit, there was no evidence
    to warrant the granting of relief by way of reformation; and the real
    issue developed between the parties was whether the plaintiff or the
    defendant was required to pay certain charges paid by the plaintiff.
    At the conclusion of the evidence and after arguments, the plaintiff
    offered a motion to amend the bill by striking out the portions thereof
    relating to reformation and by adding a paragraph seeking an inter-
    pretation of the lease with respect to the issue so developed, under
    G. L. (Ter. Ed.) c. 213, § 3, Tenth A; Rule 101 of the Superior Court
    (1932), and incidental relief.  The defendant, in opposing the motion,
    contended that such an amendment would change the cause of action
    from that for which the suit was intended to be brought, and that as
    to the matter to which the amendment pertained the plaintiff had
    an adequate remedy at law.  The motion was allowed.  Thereupon

the defendant, without demurring, filed an answer to the amended bill, which contained an allegation that the plaintiff had an adequate remedy at law. A decree was entered interpreting the lease with respect to the charges in issue and ordering the defendant to pay the plaintiff a certain sum. The defendant appealed. It appeared that the plaintiff could have maintained an action at law against the defendant to recover that sum, or could have amended the suit into an action at law. *Held*, that

(1) The controversy, as presented on the appeal, was at most one pertaining to the plaintiff's proper remedy;

(2) In the circumstances, there having been a full and fair trial of the substantial issue involved and it being desirable to terminate the case, the decree must be affirmed.

On the record, the amendment of the bill allowed in the suit in equity above described, although informal, could not be pronounced insufficient.

BILL IN EQUITY, filed in the Superior Court on February 3, 1932.

The suit was heard by *Weed*, J. The bill, an amendment thereof, material findings by the judge and a final decree entered by his order are described in the opinion. The defendant appealed. The evidence was reported.

*C. A. Warren*, for the defendant.

No argument nor brief for the plaintiff.

RUGG, C.J. This is a suit by the lessor and owner of real estate against a lessee of the first floor and basement of a building used by the defendant for its banking business. The case was heard by the trial judge upon oral and documentary·evidence which is reported in full. The trial judge made a finding of material facts. The appeal of the defendant from a final decree brings the case here. The bill of complaint as originally filed sought reformation of a written lease for a term of years. No evidence was offered warranting the conclusion that the plaintiff was entitled to reformation of the lease. Points of controversy between the parties as developed at the hearing were whether the plaintiff or the defendant was required to pay (1) the taxes on the vaults and other fixtures, furnishings and equipment installed by the defendant on the leased premises, and (2) the cost of the water used by the defendant on the leased premises. The settlement of these controversies depended upon the correct interpretation of the lease. Since the

decree was against the plaintiff as to the payment for water by the defendant to the plaintiff, that question drops out of the case.

The plaintiff leased to the defendant for a term of fifteen years from July 15, 1922, the lower portion of a business block in process of erection by the plaintiff. Thereafter, as the building progressed and in accordance with the lease, the defendant at its expense installed a vault in the basement and also grille work and other fixtures and furnishings to adapt the demised premises for use as its banking rooms. The lessee covenanted at the expiration of the term to yield up to the lessor "all and singular the premises and all erections, alterations, and additions made to or upon the same . . . but it is expressly understood and agreed that said lessee may at any time during said term, or upon the termination thereof, remove any vault or vaults . . . and all other fixtures, furnishings and equipment installed by it." The vault is so constructed as to be independent of the basement walls and as not to form a part of the structure of the building. It cannot be removed from the building without destroying the vault or some part of the structure of the building. The plaintiff reserved that part of the basement in which were located the heating and water systems. The lease described the demised premises with particularity. After providing that the lessor should install and maintain the heating and water systems, it reads in part: "It is further understood and agreed that should said lessor at any time fail or neglect to pay any tax or assessment on said property . . . said lessee may, at its option, do what said lessor may then be obligated to do . . . and may deduct the sums expended in connection therewith from the rent falling due to said lessor hereunder, whether then or thereafter payable." During the first three years of the term, the vault was assessed to the defendant and it paid the taxes. Beginning with 1926, no separate valuation of the vault has been made and the plaintiff has paid the taxes on the land and building. In 1930 and 1931 the vaults were assessed separately as real estate to the plaintiff, who paid the taxes.

The trial judge rightly interpreted the lease as a whole in the light of all the circumstances to mean that the words "any tax or assessment on said property" referred solely to the land and buildings and did not include the vault and other fixtures and furnishings installed by the lessee. The lease seems to have been framed with care to indicate that as between lessor and lessee title to the fixtures installed in the building by the lessee should remain its property during the term of the lease. *Ryder* v. *Faxon,* 171 Mass. 206. *Stone* v. *Livingston,* 222 Mass. 192, 195. *Lawyers Mortgage Investment Corp.* v. *Paramount Laundries Inc.* 279 Mass. 314, 318. It is hardly open to the defendant to take any different position because it requested the judge to rule that on the evidence it could not be found "that the vault ever became a part of the plaintiff's real estate" and that request was granted. Every implication, in the absence of express agreement, is against the idea that as between themselves a lessor should be required to pay taxes on property of the lessee. This is true even though for purposes of taxation the vault may be assessed to the lessor with her land and building because "erected thereon or affixed thereto." G. L. (Ter. Ed.) c. 59, § 3.

The tax for each year now in question was assessed to the plaintiff as a real estate tax. It created a lien, so far as concerned the taxing authorities, upon the whole property including land, buildings and other things erected thereon or affixed thereto. G. L. (Ter. Ed.) c. 59, § 3; c. 60, § 37. The plaintiff could not release her own property from the lien without paying the whole tax and thus discharging the liability. There was no direct liability on the part of the defendant to pay to the collector of taxes the tax on the vault, yet it was liable for the payment of the tax because affixed to the building and land, and payment of the tax by the plaintiff discharged that liability and so benefited the defendant. The plaintiff might have maintained an action of contract against the defendant to recover such taxes. *Phinney* v. *Foster,* 189 Mass. 182. Therefore the defendant strongly contends that this suit cannot be maintained because the plaintiff had a perfect remedy at law.

This contention is important in view of the procedure at the trial.   At the conclusion of the evidence and after arguments, the plaintiff moved to amend her bill by striking out the portions relating to reformation of the lease (it having become plain that the proof did not support that allegation) and by adding a new paragraph seeking an interpretation of the provisions of the lease on the points in controversy as developed at the trial, under G. L. (Ter. Ed.) c. 213, § 3, Tenth A, relating to declaratory judgments. *Whiteside* v. *Merchants National Bank*, 284 Mass. 165. The defendant opposed this motion on the ground (1) that such an amendment would change the cause of action from that for which it was intended to be brought and (2) that as to the matter pleaded the plaintiff had a plain, adequate and complete remedy at law.   It also pleaded the latter ground in defence.   This motion was allowed.

The allowance of this amendment was in substance a finding by the trial judge that it enabled the plaintiff to prosecute the cause of action for the enforcement of which the suit was instituted.   Regarded simply as an amendment of pleadings, this presents no substantial question of law. It was within the jurisdiction conferred by statute as to amendments.   Its allowance falls within the authority of numerous decisions.   *Clark* v. *New England Telephone & Telegraph Co.* 229 Mass. 1, 5–6.   *Pizer* v. *Hunt*, 253 Mass. 321, 331–332.   *Holmes* v. *Carraher*, 251 Mass. 536, 539. *Shapiro* v. *McCarthy*, 279 Mass. 425, 428.   See *Mackintosh* v. *Chambers*, 285 Mass. 594, 596–597.

The amendment was informal.   The case, however, had been fully tried.   The point of controversy between the parties had been sharply developed.   Its solution depended upon the interpretation of the lease in the light of conditions attendant upon the parties which had been put before the judge by oral evidence.   The plaintiff alleged in her bill in substance that the ownership of the vault remained in the defendant.   The defendant in its answer admitted that it installed and had a right to remove the vault, but denied that anything in the lease determined its ownership while affixed to the plaintiff's realty.   That created an issue.   With

respect to it the amendment asked for interpretation of the lease regarding the ownership of the vaults and for further relief. The amendment in these circumstances and in conjunction with other allegations of the bill, although not good pleading, cannot be pronounced insufficient. The defendant was given every opportunity to answer. It did not ask to demur.

The final decree contained these words: "That a proper interpretation of the terms of said lease does not require the plaintiff lessor to pay taxes with respect to the defendant lessee's vault or vaults and other fixtures, furnishings and equipment installed by the defendant lessee upon the demised premises, even though for purposes of taxation the defendant lessee's vault or vaults may be assessed to the plaintiff lessor with her land and building because 'erected thereon or affixed thereto.'" The final decree also ordered payment by the defendant to the plaintiff of the amount of such taxes found to have been paid by the latter.

It is provided by G. L. (Ter. Ed.) c. 213, § 3, Tenth A, that by rule of court an action at law or a suit in equity shall not be open to objection on the ground that a judgment or decree interpreting a written instrument is sought. Pursuant to this statute Rule 101 of the Superior Court (1932) has been established. It vests discretion in the trial judge to decline in his discretion to make a determination of rights under a written instrument. This statute was remedial legislation. It applies both to actions at law and to suits in equity. The usual rule of statutory interpretation is that such a statute should be given a construction to effectuate its purpose. After the real issue in the case at bar was isolated, it appeared that the plaintiff could have secured a remedy by an action at law. *Phinney* v. *Foster*, 189 Mass. 182. This was a suit in equity, however. The evidence had been heard. The time of the court had been consumed. The real issue between the parties was plain. Doubtless the suit might have been amended into an action at law and thus relief granted. *Merrill* v. *Beckwith*, 168 Mass. 72. *Attorney General* v. *Henry*, 262 Mass. 127, 129–130, and cases col-

lected.   It is common chancery practice in this Commonwealth that, where relief peculiar to equity is refused, jurisdiction may be retained simply for the assessment of damages.   *Newburyport Institution for Savings* v. *Puffer*, 201 Mass. 41, 47.   The situation was quite different from what it would have been if the plaintiff at the outset, having the issue clearly defined, had sought relief in equity rather than at law.   Every practical consideration dictated a final decision of the case.   Speedy justice, public welfare and private interests would be conserved by ending the case.   At most it was a question of alternative remedies.   It was not a case where by statute or other imperative rule an exclusive remedy had been established.   Cases illustrated by *School Committee of Lowell* v. *Mayor of Lowell*, 265 Mass. 353, 356–357, and *Knowlton* v. *Swampscott*, 280 Mass. 69, 71, are not pertinent.   The defendant has had before a court of competent jurisdiction one full and fair trial and the controversy ought to be terminated.   *Adams* v. *Silverman*, 280 Mass. 23, 30.   See G. L. (Ter. Ed.) c. 231, § 124.   The conclusion is that in the circumstances here disclosed there was no error.   *Baumann* v. *Baumann*, 222 App. Div. (N. Y.) 460; *S. C.* 250 N. Y. 382.   *James* v. *Alderton Dock Yards, Ltd.* 256 N. Y. 298, 305.   *Chick* v. *MacBain*, 157 Va. 60.   *Sheldon* v. *Powell*, 99 Fla. 782.   *Lisbon Village District* v. *Lisbon*, 85 N. H. 173.   See *Spyer* v. *Phillipson*, [1931] 2 Ch. 183; *Barraclough* v. *Brown*, [1897] A. C. 615.   Cases like *List's Estate*, 283 Penn. St. 255, and *Miller* v. *Siden*, 259 Mich. 19, are not deemed applicable to the facts here disclosed.

*Decree affirmed with costs.*