Hillsborough, } May 4, 1937. }

### AMOSKEAG SAVINGS BANK

*v.*

### SHELL EASTERN PETROLEUM PRODUCTS, INC.

*Warren, Wilson, McLaughlin & Wiggin* (*Mr. Wiggin* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wyman* orally), for the defendant.

MARBLE, J.   A building placed on the land of another with the right of removal may be treated as distinct from the land.   *Voudomas* v. *Bragg*, 83 N. H. 270, 272, and cases cited.   Hence it has been held that "Where a lease is silent as to the payment of taxes, improvements which are removable by the tenant at the end of the term are taxable to him, and not to the landlord."   *LaPaul* v. *Heywood*, 113 Minn. 376, 378, and authorities there cited; Annotation, 73 A. L. R. 824, 828.

Moreover, the mere fact that a lessor covenants to pay all taxes assessed against the leased premises does not necessarily mean that the word "premises" must be deemed to include those additions which the lessee has made to the property after the execution of the lease.   *Phinney* v. *Foster*, 189 Mass. 182, 186.   The question is always one of intent to be determined by construing the lease "as a connected whole" (*Machinist* v. *Koorkanian*, 82 N. H. 249, 252) in the light of the facts and circumstances surrounding its execution. *Crocker* v. *Hill*, 61 N. H. 345, 346; *Upton* v. *Hosmer*, 70 N. H. 493, 495.

Since the real estate involved in the present controversy was unimproved at the beginning of the term, the description of the demised premises in the first clause of the lease as a parcel of land is not of controlling importance.   The designation was accurate and, in the absence of any provision to the contrary, all "non-removable additions and improvements" would become a part of the realty and belong to the lessor.   *Boston & Maine Railroad* v. *Railroad*, 83 N. H.

312, 313. Nor is the covenant providing for a substantial increase in rent after the fifth year a conclusive indication that the lessor intended this increase as compensation for the taxes assumed.

Other provisions, however, are more significant. The third clause provides that the lessee may erect and install such equipment and apparatus as it deems necessary for its business, may make "alterations and changes," and may paint "in Shell colors, the buildings," equipment or apparatus, "now or hereafter upon the leased premises." The fifth clause refers to "buildings, tanks, pumps and other structures" necessary for the keeping, storage and sale of not less than 4,000 gallons of gasoline and 500 gallons of lubricating oil and to the construction and maintenance of driveways. It is thus apparent that the lessor understood when it covenanted to pay "all taxes, assessments and other governmental or municipal charges levied or assessed upon the leased premises" that the defendant was to conduct thereon the "business of operating a gasoline filling and/or automobile service station."

Because of the implied restrictions of the lease the defendant could not use the premises for any other purpose (Tiffany, L. & T., *p.* 804, and cases cited), and it is a fair inference from the agreed facts that the structures erected are merely such as the parties must have contemplated in view of the location of the leased property on one of the principal thoroughfares of Manchester.

In this respect the case differs from *Phinney* v. *Foster*, 189 Mass. 182, and more nearly resembles *Spoor-Lasher Co.* v. *Company*, 280 N. Y. Supp. 587 (affirmed in 269 N. Y. 447). In the former case the court states that "The amount of the tax which would be assessed upon the land alone could be fairly estimated by the lessor, while the value of the buildings to be erected was entirely within the discretion of the lessee." In the latter case it is said: "At the time the lease was executed the tanks had either been erected or plans therefor approved by the landlord. It knew what the tax burden would be and must have arranged the rent to include taxes accordingly."

The defendant has paid the tax on its tanks, pumps, and stock in trade without objection, but denies its obligation to pay the tax on the buildings and other improvements which cannot be moved without destruction. The eighth clause of the lease provides that the lessee "may at any time during this lease and within thirty days after its termination enter upon and remove from the leased premises any property owned or placed thereon by it." Buildings are not specifically included in this clause although reference thereto is made

in each of the other clauses where the additions and improvements are mentioned. Construing the eighth clause in connection with the others already considered, we believe it to be fairly arguable that the word "property" was intended to embrace only specific articles of personal property, such as pumps and tanks, and was not intended to apply to buildings or other structures. However, the question here decided relates merely to the obligation to pay the tax, and no opinion is expressed as to the right of the defendant to remove or dismantle at any time the structures it has erected.

It is suggested that since the lessee is required to surrender the premises at the termination of the lease in as good condition as they were in at the time of the letting, the defendant has no option as to the removal of all additions it has made, and that such additions must therefore be treated, so far as the parties are concerned, as personal property. But the clause in question does not mean that the permitted additions must be eliminated and the initial condition restored. "If that had been in the minds of the parties, words indicating identity with the former condition and not comparative excellence would have been employed." *Cawley* v. *Jean*, 218 Mass. 263, 269. "All that this covenant requires is that the premises in their transformed condition shall be returned to the landlord in a reasonably good state of repair, reasonable use and wear excepted." *Kennedy* v. *Bank*, 11 Fed. Supp. 611, 619.

The lessor's covenant to pay taxes is explicit and includes in terms all assessments and charges that may be levied on the leased premises. The structures erected by the lessee are real estate for the purposes of taxation (*Granite State Land Co.* v. *Hampton*, 76 H. N. 1, 7; *O'Donnell* v. *Meredith*, 75 N. H. 272), and if the word "premises" as used in the lease "was not to include all the premises or all of the real estate as it existed at the time of the assessment, the lease should have so stated." *Spoor-Lasher Co.* v. *Company*, 269 N. Y. 447, 450.

The construction for which the defendant contends is accordingly adopted, but since there is no agreement for judgment and since the questions of law arising under the agreed facts have been transferred merely "for advice and information" (*Fidelity &c. Ins. Co.* v. *Brennan*, 85 N. H. 291, 296), the order is

*Case discharged.*

All concurred.