HORATIO A. PHINNEY, trustee, *vs.* THOMAS N. FOSTER.

Suffolk.    May 17, 1905. — September 11, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND,
LORING, & BRALEY, JJ.

*Landlord and Tenant.    Contract,* Implied: common counts.

An owner of land let it with the provision that the lessee might use the land for
the construction and use of a certain amusement enterprise, and might build
any lawful. structures on the demised land, which should be personal property
and remain the property of the lessee with the right of removal.    Under this
provision the lessee constructed certain buildings which were assessed at a
valuation of $30,000.    The lease, immediately after the description of the
land and the reservation of rent, and before the provisions in regard to the
use of the land, contained a covenant by which the lessor agreed to "save
the lessee harmless from all taxes, assessments and betterments levied upon said
premises until the termination of this lease."    The lessor was compelled to pay
the whole amount of the tax levied on the land and buildings, and, the lessee
refusing to contribute, the lessor brought an action of contract against the
lessee for the portion of the tax which was paid by the lessor on the buildings
belonging to the lessee.    *Held,* that in view of the particular location of the
covenant in the lease and of the other provisions of the lease, the words "said
premises" in the covenant referred only to the land without the buildings to be
erected upon it by the lessee, that the covenant confined the liability of the
lessor to the portion of the taxes which might be assessed upon the valuation of
the land exclusive of the buildings, and that the lessor was not bound to pay
any increase of taxes due to the valuation of the buildings.    *Held, also,* that the
lessor, having been compelled by law to pay the taxes, which were a charge on
the buildings belonging to the lessee and which between them the lessee was
bound to pay, could recover the amount from the lessee as money paid to
his use.

CONTRACT, for the amount of certain taxes alleged to have
been paid by the plaintiff for the defendant.    Writ dated May
9, 1904.

The declaration alleged : First.    That the Revere Roller
Coaster Company, a corporation established under the laws of
this Commonwealth, by a certain lease in writing dated October
22, 1901, a copy of which is annexed to the declaration, leased
to the Aquarama Company, a corporation established under the
laws of the State of New Jersey, certain land owned by the
Revere Roller Coaster Company situated on Ocean Avenue at
Revere Beach in the town of Revere for the term of five years

from November 1, 1901, the land being fully described in the lease.

Second. That by the terms of the lease the lessor, the Revere Roller Coaster Company, covenanted and agreed that it would save the lessee, the Aquarama Company, harmless from all taxes, assessments and betterments levied upon the demised land until the termination of the lease.

Third. That it was provided in and by the lease that the lessee or its assigns might use the demised land for the construction and use of the amusement enterprise known as the " Old Mill " and might build any lawful structures upon the demised land, and that such structures should be personal property and should remain the property of the lessee or its assigns whether removed before or after the termination of the lease or any renewal thereof, and that the lessee or its assigns might enter the demised land to remove the structures.

Fourth. That after the making of the lease as aforesaid the lessee, the Aquarama Company, assigned the lease to the defendant, Thomas N. Foster; that the defendant, as permitted by the terms of the lease as aforesaid, built certain structures on the demised land, the structures being known as the Old Mill buildings, and that the structures always have been since the building thereof and were on May 1, 1903, personal property and owned by the defendant.

Fifth. That the plaintiff, Horatio A. Phinney, as trustee of the Revere Beach Land Trust, under a certain indenture dated September 10, 1902, is now, and was on May 1, 1903, the owner of the demised land by mesne conveyance from the Revere Roller Coaster Company, subject to the lease.

Sixth. That the demised land was on May 1, 1903, part of a larger parcel of land in the town of Revere owned by the plaintiff as trustee as aforesaid; that the portion of the larger parcel of land not included in the lease to the Aquarama Company assigned to the defendant as aforesaid, was under lease to a person or persons other than the defendant, who had, before May 1, 1903, erected structures thereon under provisions contained in his or their lease similar to the provisions contained in the lease to the Aquarama Company as above set forth.

Seventh. That the assessors of the town of Revere, as required

by the laws of the Commonwealth, assessed to the plaintiff as trustee as aforesaid as of May 1, 1903, the entire parcel of land owned by the plaintiff as set forth above, together with all the structures existing and situated on the parcel of land on May 1, 1903, including the Old Mill buildings owned by the defendant as aforesaid, the entire parcel of land owned by the plaintiff being assessed at a valuation of $70,000, the structures owned by the defendant as aforesaid being assessed at a valuation of $30,000, and the structures on the remaining portion of the larger tract of land not included in the lease to the Aquarama Company being assessed at a valuation of $10,500 ; that the assessors assessed to the plaintiff as of May 1, 1903, a tax of $1,989 on all the land and all the structures, and the tax was committed to the collector of taxes of the town of Revere for collection ; that afterwards, to wit, on August 1, 1903, the collector of taxes demanded of the plaintiff the payment of the tax.

Eighth. That immediately after the demand for the payment of the tax by the collector of taxes as aforesaid, the plaintiff notified the defendant of the tax and of the demand, and requested the defendant to contribute and pay to him or to the collector such portion of the tax as was assessed upon the structures and personal property of the defendant situated upon the land of the plaintiff as aforesaid, to wit, the sum of $540 ; that thereafter at divers times the plaintiff demanded of the defendant contribution and payment of that portion of the tax, but the defendant always refused to contribute and pay to the plaintiff that portion of the tax.

Ninth. That on or about January 26, 1904, the plaintiff, upon the demand of the collector of taxes and as required by the laws of the Commonwealth, paid to the collector the amount of the tax upon the land owned by the plaintiff as aforesaid and upon the structures and personal property of the defendant and others, to wit, the sum of $1,989, with interest lawfully due thereon from October 1, 1903, amounting to the sum of $38.12; that thereafter, to wit, on or about January 26, 1904, the plaintiff demanded contribution and payment of the portion of the tax assessed upon the structures and personal property of the defendant situated upon the land of the plaintiff as aforesaid, to wit, the sum of $540 with interest thereon, but the defendant refused

and still refuses to pay to the plaintiff that sum and interest thereon.

The defendant demurred to the declaration and for causes of demurrer assigned:

1. That it appears that the plaintiff, by the terms of the lease, a copy of which is annexed to the declaration, is bound to save the defendant harmless from all taxes, assessments and betterments levied upon the premises described in the lease, and it appears that the sum paid by the plaintiff was by reason of a tax levied upon the premises.

2. That it does not appear that the defendant, or any one representing him, agreed to pay taxes levied upon the premises described in the lease.

The clause of the lease relied on by the defendant was as follows:

" And the lessor further covenants and agrees that it will save the lessee harmless from all taxes, assessments and betterments levied upon said premises until the termination of this lease, but said lessee or its assigns shall repay to said lessor or its assigns, or to said Geo. W. Hall or his assigns, any amounts so expended by him or them for assessments and betterments if said lessee shall buy said premises as aforesaid."

In the Superior Court the case was heard by *Fessenden*, J., who overruled the demurrer, and gave judgment for the plaintiff, assessing the damages in the sum of $583.20. The defendant appealed.

The case was submitted on briefs at the sitting of the court in May, 1905, and afterwards was submitted on briefs to all the justices.

*G. C. Coit*, for the defendant.

*H. H. Darling*, for the plaintiff.

HAMMOND, J. Since the plaintiff and the defendant have respectively succeeded to the rights and liabilities of the original parties to the lease we shall treat them as though they were such parties.

The first question is whether the lessor's covenant to " save the lessee harmless from all taxes, assessments and betterments levied upon said premises until the termination of this lease " applies to the taxes upon the buildings which were subsequently

erected by the lessee and by the terms of the lease were his own property. The question seems to turn upon the meaning to be given to the words "said premises." Do they mean simply the land which was the only thing in existence at the time of the lease, or do they mean the land with such buildings as may be upon it at any time during the existence of the lease?

It is to be noted that the covenant is preceded in the lease only by the description of the land, the reservation of rent, and an agreement giving to the lessee a conditional right to exercise certain options for the purchase of "said premises" and adjoining land. It is followed by provisions relative to the use which the lessee may make of the land. It is evident that the parties contemplated that the lessee might make some changes in the surface of the land and might erect buildings of considerable value. The buildings were to be the property of the lessee and he had the right to remove them either before or after the termination of the lease, except in case of forfeiture of the lease on his part. Under the lease buildings to the assessed value of $30,000 were erected.

There was no restriction as to the nature, size or cost of the buildings which the lessee could erect. For aught the lessor knew they might have been so valuable that the tax assessed on their account would exceed the whole amount of the rent. The lessor does not seem to have had any interest whatever in the "amusement enterprise" for which the lessee intended to use the premises. The amount of the tax which would be assessed upon the land alone could be fairly estimated by the lessor, while the value of the buildings to be erected was entirely within the discretion of the lessee. As between the parties to the lease the land belonged to the lessor and the buildings to the lessee. Neither owned the whole. In view of the particular location of this covenant in the lease and the other provisions of the lease, a majority of the court are of opinion that the term "said premises" in the covenant embraces simply the land; that the covenant considered as a whole was restrictive in its nature as to the portion of the ordinary taxes which the lessor was to pay, and was intended to confine his liability to the portion of the taxes which might be assessed upon the valuation of the land exclusive of the buildings; or, in other words, that as

between the parties the lessor was not bound to pay the increase in the taxes due to the valuation of the buildings. It was a "different agreement" within the meaning of R. L. c. 12, § 20. The case is clearly distinguishable from *Milligan* v. *Drury*, 130 Mass. 428, cited by the defendant.

The next question is whether the lessor who has paid the tax on the buildings can recover the amount from the lessee. Strictly speaking, there has been no tax on the buildings, as such, but we use the phrase as a convenient one to designate the increase in the tax which is due to their assessed valuation. Whatever may be the agreement of owners as to whether buildings shall be personal property or real estate, the statutes provide that "real estate for the purpose of taxation shall include not only all land within the commonwealth but also all buildings and other things erected on or affixed to the same." R. L. c. 12, § 3. While it is true that the statutes provide that there shall be a valuation of the land exclusive of the buildings, and of the buildings exclusive of the land, still the tax is assessed as one indivisible real estate tax upon the whole property, and a lien for the whole tax exists upon the whole property. R. L. c. 12, § 60, and c. 13, § 35. *Milligan* v. *Drury, ubi supra. McGee* v. *Salem*, 149 Mass. 238, and cases cited.

On May 1, 1903, the plaintiff was the owner of this land and also of a parcel of land adjoining, and on that day there was assessed to him a tax upon both of these parcels and upon all the structures existing on the parcel named in the lease. The whole property was valued at $70,000, of which $30,000 was the valuation placed upon the buildings owned by the defendant. The whole tax was $1,989, of which $540 was the portion assessed upon the value represented by these buildings. The plaintiff requested the defendant to pay the tax upon the buildings and the defendant refused.

The situation then was this. There was no tax upon the buildings as such, and hence there was no personal liability on the part of the defendant to pay anything to the collector. The tax was wholly upon the real estate which included for purposes of taxation the buildings owned by the defendant. This tax was a lien upon the whole property including the buildings, and while there was no personal liability which the collector could

enforce against the defendant, yet the defendant's property was held liable, and the payment of the tax enured to the benefit of the defendant's estate by discharging that liability. The plaintiff could not release his own property by paying a part of the tax. He must pay the whole or allow the property, land and buildings, to be sold. He was therefore compelled by law to pay an obligation which although not personal to the defendant was nevertheless in the nature of a charge upon the latter's estate.

It is a familiar principle of law that while one cannot make himself the creditor of another by voluntarily paying the debt of the latter without his request, still where one to save his property from being sold on legal process is compelled to pay money which another is under a legal obligation to pay, and which as between the two the latter should pay, then in law the payment is made at the request of the latter, and the former may recover from him. *Exall* v. *Partridge*, 8 T. R. 308. *Hale* v. *Huse*, 10 Gray, 99. *Nichols* v. *Bucknam*, 117 Mass. 488. In the case before us there was, it is true, no legal personal liability on the part of the lessee to pay the tax upon the buildings, and there was only a lien upon them, but, as was said by Gibbs, C. J. in *Taylor* v. *Zamira*, 6 Taunt. 524, "nothing can rest on that distinction." The principle is the same whether the debt be personal or only a lien upon the property. In either case the law implies a request by the person relieved, and the person who pays may recover of him whose estate is benefited. For a short discussion of the point see the notes to *Lampleigh* v. *Brathwait*, 1 Smith's Lead. Cas. (8th Am. ed.) 151, *et seq.*

In the opinion of a majority of the court the demurrer should be overruled.

*Demurrer overruled.*