WYCOFF v. GAVRILOFF MOTORS, INC.

1. LANDLORD AND TENANT—CONSTRUCTION OF LEASE—IMPROVEMENTS —TAXATION.

Provision of 15-year lease that alterations and additions were to be "the sole charge and responsibility of the lessee and the lessee shall protect said building and premises from any lien or charges whatsoever, by reason of said alterations or improvements," *held*, insufficient to show an intent of the parties to the lease that the lessee was to be liable for an increase in taxes due to the improvements made by the lessee with the written consent of the lessor.

2. SAME—LEASES—TAXATION.

The rule that the landlord is ordinarily liable for payment of taxes or assessments chargeable against the premises in the absence of an agreement by the lessee to pay them is not inflexible, where there are overbalancing considerations indicating the lessee should have that obligation.

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 32 Am Jur, Landlord and Tenant §§ 287, 288.
Clause of lease providing for payment of taxes by lessor as applicable to increase in real-estate taxes occasioned by lessee's improvements. 68 ALR2d 1289.
Rights and duties between landlord and tenant in respect of taxes or assessments in absence of stipulation in lease in that regard. 73 ALR 824.

3. SAME—TAXATION—LAND—IMPROVEMENTS.

A lessor may be liable for taxes on the land leased in the absence of a covenant in the lease as to who shall pay the taxes but the lessee is liable for the taxes on any improvements he may erect thereon for his own use and benefit.

4. SAME—LEASE—IMPROVEMENTS—INCREASED TAX LEVY.

Lessee under 15-year lease of premises for garage and automobile sales business who erected a small sales office and a large building in furtherance of the express purpose of the lease, which was silent as to ownership of buildings erected on the premises, but provided for fixed monthly rental not subject to change during the term and with a right to purchase at a fixed sum *held*, liable to landlord for increased tax levy due to the improvements erected by it on the leased premises.

Appeal from Genesee; Roth (Stephen J.), J. Submitted January 4, 1961. (Docket No. 29, Calendar No. 48,418.) Decided March 1, 1961.

Assumpsit by Lena A. Wycoff against Gavriloff Motors, Inc., a Michigan corporation, for reimbursement of sums paid in additional taxes occasioned by improvements on leased property. Judgment for plaintiff. Defendant appeals. Affirmed.

*Cline & George,* for plaintiff.

*Gault, Davison & Bowers,* for defendant.

KAVANAGH, J. Plaintiff sued defendant to recover the increase in real-estate taxes paid as a direct result of the increase in valuation due to improvements defendant-lessee made to the premises with the consent of plaintiff-lessor, all in pursuance of a written lease between the parties. Defendant denied liability and claimed the increase in taxes was the obligation of plaintiff-lessor. The sole question presented is whether the lessor or the lessee has the burden to pay the amount of increased taxes upon the leased property because of improvements

placed thereon by the lessee under a lease which failed to specifically provide for such eventuality.

Under the terms of the lease in question the lessee was given the right to make general alterations or material additions with the written consent of the lessor. This consent was obtained. The clause in the lease, claimed by the lessor to provide for payment by the lessee of the increased tax due to the improvements, reads as follows:

"All alterations or additions shall be upon the sole charge and responsibility of the lessee and the lessee shall protect said building and premises from any lien or charges whatsoever, by reason of said alterations or improvements."

The trial court construed the above provision to indicate the intent of the parties was that the increase in taxes due to the improvements placed on the leased property by the lessee would be paid by the lessee. It seems far from clear that such intent may be inferred from the above provision in the lease. We ought, then, to look at the problem in the absence of any clear provision relating to the payment of this increased tax levy. We turn, therefore, to general legal principles for the answer to the question.

It is clear that, in the absence of an agreement making it the duty of the lessee to pay the taxes or assessments chargeable against the premises, the law ordinarily imposes this obligation upon the lessor. In *Sherman* v. *Spalding,* 126 Mich 561, the Court held that where a lease is made without any stipulation as to the taxes, the landlord—not the tenant—is bound to pay the taxes. It should be remembered, however, that the rule placing the burden upon the lessor when the lease is silent on the payment of taxes is not an inflexible one, but leads to the contrary where overbalancing considerations

indicate that result. *Pittsfield & N. A. R. Corp.* v. *Boston & A. R. Co.,* 260 Mass 390 (157 NE 611). Provisions as to the length of term of the lease; whether the lease itself is renewable; whether the lessee has an option to purchase; whether any improvements are to be considered realty and attach to the land and are nonremovable by the tenant at the expiration of the lease; whether the lessee is compensated for any improvements; whether the rental basis is fixed for the term of the lease; are all matters which must be considered to properly determine liability.

The lease in the instant case was originally for a 15-year period, and approximately a year after its execution was amended to provide for an additional 5 years and for the right in the lessee to purchase the property at a fixed sum at any time during the original lease term or any renewal thereof. The lease also provided for a fixed monthly rental not subject to change during the term of the lease or the subsequent additional 5-year extension period. No provision was made in the lease as to the ownership or any improvements or additions erected on the property by the lessee. The lease did provide that the lessee would keep and maintain the premises in a good state of repair during the lease term and at the termination deliver the property to the lessor in as good a state of repair and maintenance as of the date of the creation of the lease, except reasonable depreciation because of lapse of time.

The rule is well established that, although the lessor is liable for taxes on the land leased, in the absence of a covenant in the lease stipulating as to who shall pay the taxes on the leased premises, the lessee is liable for the tax on any improvements which he may erect thereon. *Bournique* v. *Williams,* 225 Ill App 12; *Philadelphia, W. & B. R. R. Co.* v. *Appeal Tax Ct.,* 50 Md 397; *People, ex rel. Muller,*

v. *Board of Assessors of Brooklyn,* 93 NY 308; *Yeo*
v. *Leman,* 2 Strange 1191 (93 Eng Rep 1120). See,
also, *Phinney* v. *Foster,* 189 Mass 182 (75 NE 103);
*Leach* v. *Goode,* 19 Mo 501; *Joslyn* v. *Spellman,* 9
Ohio Dec Rep 258; which hold that as between the
lessor and lessee, the latter is liable, in the absence
of special agreement, for taxes on improvements
which have been placed upon the land by him for
his own use and benefit.

In the early English case of *Watson* v. *Home,*
7 B & C 285 (6 LJ KB OS 73, 108 Eng Rep 730),
the lessor demised for a period of years a piece of
property for a fixed annual rental. The tenant
covenanted not to build on the land without the li-
cense of the lessor. The lessor agreed to pay all
taxes already charged to or to be charged upon or
in respect of the leased property during the lease
term. At the time the lease was executed the lessor
gave a license to the lessee to build on the leased
land. The lessee did build and thereby increased
the annual value of the premises. The court held
the landlord was liable upon his covenant to pay the
taxes in proportion to the rent reserved and not to
the improved value. The court said (pp 289–291):

"The question turns entirely upon the construc-
tion of that clause in the lease by which the lessor
covenants to pay and discharge, as well the land tax
as all other taxes, charges, rates, and assessments,
parochial, parliamentary, or otherwise, already
charged, or to be charged upon or in respect of the
said demised piece or parcel of ground, or any part
thereof, during the continuance of the term. The
annual rent reserved was 79*l.* 12*s.* 6*d.*, and there
was a covenant, by the lessee, not to build upon
the demised premises without the consent of the
lessor. If the land had not been built upon, but
had remained in the same state as when the lease
was executed, it is quite clear that the lessor would

be liable to pay such taxes only as would have been payable in respect of property of the annual value of 79*l*. 12*s*. 6*d*.  By the lease the parties have agreed that that sum should be taken as the annual value of the premises.  It is the annual sum which the property yields to the lessor, and in respect of which he would have been liable to be assessed to the land tax and poor rates if they had been payable by him; but the lessee afterwards built upon the land, and thereby increased its value.  The question is, whether the lessor is bound to contribute to the tenant's taxes in proportion to the rent reserved, or in proportion to the increased rate at which the premises are now assessed by reason of the improvements made by the tenant.  The covenant, in terms, is to pay all taxes charged or to be charged upon the demised piece or parcel of ground during the continuance of the term; but that covenant must receive a reasonable construction.  If it were literally construed, so as to make the landlord liable for all taxes charged in respect of the improved value, it might possibly happen, in consequence of the improved value of the premises and the increased rate of taxation, that the landlord would have nothing to receive for the use of his land.  Now that could not have been the intention of the lessor.  As soon as the lease was executed the property might have been assessed at the annual value of 79*l*. 12*s*. 6*d*; and when improvements were made, and greater rates consequently imposed, the increased burden ought in justice to fall upon that person who enjoys the benefit of the improvements."

Another rule of law provides as between the lessor and lessee, where the lease is silent as to the payment of taxes, that the burden of taxes upon improvements removable by the tenant must fall upon him.  In the case of *La Paul* v. *Heywood,* 113 Minn 376 (129 NW 763, 32 LRA NS 368, Ann Cas 1912A, 274), the court held that where no provision is made for the payment of taxes in a lease of real estate,

and the lease provides that structures or improvements put upon the land by the lessee shall be removable, and the landlord is required to pay the entire amount of taxes to save the property from tax sale, the landlord may maintain an action against the tenant for the recovery of that portion of the taxes levied upon the improvements.

The lease in the instant case does not provide as to the right of removal of any improvements placed on the leased property by the lessee. The lease did provide the parties mutually agreed the premises were to be used by the lessee in the garage and automobile sales business. The buildings erected by the lessee subsequent to the execution of the lease consisted of a small sales office and a large building used by the lessee in furtherance of the express purpose of the lease. In *McClintic-Marshall Co.* v. *Ford Motor Co.,* 254 Mich 305, 321 (77 ALR 807), this Court said:

"It is a general rule that buildings erected on the lands of another under leave or license so to do, in furtherance of the purposes of the permissive use and occupation, remain personal property and may be removed by the lessee or licensee at any time during his occupancy, or, if such occupancy or right of occupancy terminate on a contingency, within a reasonable time thereafter."

In *Hayward* v. *School District No. 9 of the Township of Hope,* 139 Mich 539, the plaintiff-lessor brought action against defendant-lessee to recover the value of a schoolhouse the tenant removed from the land at the termination of the lease. This schoolhouse had been erected by the tenant after execution of the lease. In holding the tenant had the right to remove the building, the Court said (pp 541, 542):

"This writing does not in express terms give defendant the right to remove the schoolhouse. Neither does it provide that the schoolhouse shall be the property of the owner of the land. If the rights of the parties are determined by common-law principles, the schoolhouse was defendant's property, for it is settled in this State that the tenant owns buildings erected by him on leased land, 'and in furtherance of the purpose for which the premises were leased.' See *Kerr* v. *Kingsbury,* 39 Mich 150 (33 Am Rep 362). See, also, *Osborn* v. *Potter,* 101 Mich 300; *Van Ness* v. *Pacard,* 2 Pet (27 US) 137 (7 L ed 374). Accordingly, the tenant may remove such buildings during his tenancy, or, if his tenancy terminate on a contingency, within a reasonable time after it terminates. See *Martin* v. *Roe,* 7 El & Bl 237 (119 Eng Rep 1235); *Northern Cent. R. Co.* v. *Canton Co.,* 30 Md 347; 2 Taylor on Landlord & Tenant (9th ed), § 552."

In the case of *Cameron* v. *Oakland County Gas & Oil Co.,* 277 Mich 442 (107 ALR 1142), the lessor sought to restrain the lessees from removing certain buildings on the leased premises. The property had been leased for a period of 3 years with option of renewal for an additional 2 years for the purpose of operating a gasoline filling station and real-estate office. The lease contained no specific provision as to the ownership of the buildings at the expiration of the leasehold. The Court held the tenant was entitled to remove the structures which were composed of cement blocks and stucco with cement floors and on substantial concrete foundations. The Court said that such right of removal is founded upon public policy and has its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use of his property under the circumstances. The Court further stated (p 452):

"The reason property of this kind is personal, rather than real, is based upon the rule the law implies an agreement that it shall remain personal property from the fact the lessor contributes nothing thereto and should not be enriched at the expense of his tenant when it was placed upon the real estate of the landlord with his consent. There is no unity of title between the owner of the land and the owner of the structures, and the buildings were not erected as permanent improvements to the real estate, but to aid the lessee or licensee in the use of his interest in the premises."

See the extensive list of various structures which may be removed by the tenant on leased premises on page 451 of the *Cameron* opinion.

In *Biallas* v. *March,* 305 Mich 401, a 20-year lease provided that certain premises consisting of a vacant lot were to be occupied by the lessee for a public dance hall, confectionery, and restaurant and returned in like condition as when taken. The tenant erected a large building costing approximately $10,-000, which he occupied first as a dance hall, confectionery, and restaurant and, incidentally, a part as his living quarters. The lease was silent as to the ownership of buildings to be erected by the lessee. The Court held the lessee had the right to remove the buildings as trade fixtures since there was nothing in the lease to the contrary.

Also, in *Smith* v. *Hegarty,* 308 Mich 354, the Court held a tenant was entitled to remove a streetcar body and attached lean-to which had been placed on the landlord's lot for use as a lunch counter.

Thus, under the cited cases it seems clear the buildings erected by the tenant in the case at bar were constructed in furtherance of the purpose of the lease and, therefore, removable by the lessee at the termination of the lease. Since such property remained in effect the personal property of the lessee, it should be the lessee who is responsible for

the increased tax levy attributable to the improvements.

In the case of *Phinney* v. *Foster,* 189 Mass 182 (75 NE 103), the court held that where under a lease certain premises were let for use as an amusement park and the tenant subsequently erected various structures on the land in furtherance of such purpose with right of removal, the tenant was responsible for the increased tax levy attributable to such buildings, even though the lessor had covenanted to pay the taxes on "said premises." The court said this covenant referred only to the land without the buildings subsequently erected by the tenant, and thus the lessor was not bound to pay any increase in taxes due to the valuation of the buildings. See, also, 2 Cooley, Taxation (4th ed), § 593. In 32 Am Jur, Landlord & Tenant, § 288, pp 268, 269, it is stated that in case the assessed value of the demised premises is increased by reason of the erection of improvements by the lessee which he is entitled to remove or for which he may be compensated by the lessor, and the lease is silent as to taxes, the better view is that the amount in which the taxes are enhanced by reason of such improvements is, as between the lessor and lessee, to be borne by the latter. See, also, 51 CJS, Landlord & Tenant, § 359, pp 1050–1052; *Beck* v. *F. W. Woolworth Co.* (ND Ia), 111 F Supp 824; *Kentucky Farm & Cattle Co.* v. *Williams* (ED Ky), 140 F Supp 449.

It seems clear under the circumstances in the instant case the lessee must bear the increased tax levy due to the improvements erected by it on the leased premises.

The judgment of the lower court is affirmed. Appellee shall have costs.

Dethmers, C. J., and Carr, Kelly, Smith, Black, Edwards, and Souris, JJ., concurred.