[S. F. No. 21595.   In Bank.   July 1, 1965.]

E. F. LAWRENCE et al., Plaintiffs and Appellants, v. F. W. WOOLWORTH CO., Defendant and Respondent.

Lerer & Moltzen, Lerer, Moltzen & McAteer and Allan R. Moltzen for Plaintiffs and Appellants.

Randell Larson, Ransom S. Cook and Severson, Zang, Werson, Berke & Larson for Defendant and Respondent.

PETERS, J.—Plaintiffs, the landlords of defendant, appeal from a judgment for defendant determining, in an action for declaratory relief, that the landlords, as between them and the tenant, should bear the expense of an increase in property taxes caused by certain improvements constructed by the tenant on the demised premises.

On April 6, 1960, the landlords leased certain unimproved

real property in Palo Alto to the tenant for a term of approximately three years, with two successive options granted to the tenant to extend the term for a period of up to three years on each option. Thus, the lease could, at the option of the tenant, run for nine years. The annual rental was $6,000, payable in installments by the month.

After taking possession, the tenant constructed certain improvements on the property. They were a steel building and a lath house (each of which was bolted to a concrete base), a cyclone fence, certain light standards, and signs. On the property thus improved the tenant operated a nursery. The improvements cost nearly $50,000. The property tax attributable to them was paid by the landlords, and totaled approximately $600 per year. The problem is, as between the landlords and the tenant, who is liable for these increased taxes caused by the improvements?

The lease did not mention taxes. It did provide, however, that the tenant could construct improvements on the premises and it had the right to remove them during the term of the lease. But any improvements remaining on the premises at the end of the term were to belong to the landlords, and the tenant had neither the right nor the obligation to remove them at that time.[1]

---

[1]Article 7 entitled ''Fixtures and Personal Property'' provides: ''Any trade fixtures, equipment and other property installed in or attached to the demised premises by and at the expense of the Tenant shall remain the property of the Tenant, and the Landlord agrees that the Tenant shall have the right at any time, and from time to time, to remove any and all of its trade fixtures, equipment and other property which it may have stored or installed in the demised premises, including but not limiting the same to counters, shelving, showcases, mirrors, slides and air-conditioning, cooling and other movable machinery. The Landlord agrees not to mortgage or pledge the Tenant's trade fixtures, equipment and other property.''

Article 11 entitled ''Tenant's Right to Construct Improvements and Make Alterations'' provides: ''The Landlord agrees the Tenant may at its own expense from time to time during the term hereof, construct on the demised premises such buildings and other improvements (including but not limited to fencing, paving and landscaping) and make such alterations, additions and changes therein as it finds necessary or convenient for its purposes. The Landlord agrees the Tenant may from time to time during the term hereof, remove any building or other improvements erected by it; however, any such buildings or improvements which shall not have been removed by the Tenant at the end of the term of this lease, shall be delivered to the Landlord in such condition as the same shall be at that time and the Tenant shall have neither the right nor the obligation to remove the same from the demised premises or restore the premises to the condition in which they were originally. The Tenant agrees that any such work shall be done in a first-class workmanlike manner and subject, however, to all applicable Federal, State and Municipal Laws and regulations and in compliance therewith.''

California has held, in accordance with the general rule, that, in the absence of an express agreement holding the tenant responsible, as between landlord and tenant, the landlord has the obligation to pay all taxes assessed against the demised premises during the term of the lease. (*Los Angeles Land & Water Co.* v. *Consumers Rock & Gravel Co.*, 3 Cal.2d 77, 79 [43 P.2d 281].) California appellate courts, however, have not yet passed upon the question of whether this general rule applies to taxes attributable to improvements which are placed upon the property by the tenant and which are removable by him.

In other jurisdictions there is a well-settled exception to the general rule holding. the landlord responsible for taxes. ''Since the rent usually has not been established with reference thereto, the lessee, as between himself and the lessor, is under a duty to pay taxes on improvements which he erects upon the premises for his own benefit. This rule is clear where the tenant has the right to remove the improvement at the end of the term, and is not altered by the fact that the lessor has a contract to purchase the improvement.'' (1 American Law of Property (1952) § 3.77, p. 345; see also 5 Ballard, Law of Real Property (1899) § 899, p. 740; 2 Cooley, Taxation (4th ed. 1924) § 593, p. 1268; Jones, Landlord and Tenant (1906) § 412, p. 457; 1 Tiffany, Landlord and Tenant (1910) § 141, pp. 841-842; 2 Walsh, Law of Real Property (1947) § 165, p. 231; Note 86 A.L.R.2d 682; 32 Am.Jur., Landlord and Tenant, § 288, pp. 268-269; 51 C.J.S., Landlord and Tenant, § 359, pp. 1050-1051.)

This exception was applied in *La Paul* v. *Heywood* (1911) 113 Minn. 376 [129 N.W. 763, 32 L.R.A. N.S. 368, Ann.Cas. 1912A 274], where the tenant had erected a two-story building on the demised premises which he was at liberty to remove at the termination of the lease. The lease made no provision about liability for taxes. The tenant was held liable for the increase in taxes due to the improvement. ''Where a lease is silent as to the payment of taxes, improvements which are removable by the tenant at the end of the term are taxable to him, and not to the landlord.'' (*Id.* at p. 764 [129 N.W.].) See also *Kentucky Farm & Cattle Co.* v. *Williams* (D.C.E.D.Ky. 1956) 140 F.Supp. 449; *Callahan* v. *Broadway Nat. Bank* (1934) 286 Mass. 473 [190 N.E. 792]; *Phinney* v. *Foster* (1905) 189 Mass. 182 [75 N.E. 103]; *Wycoff* v. *Gavriloff Motors, Inc.* (1961) 362 Mich. 582 [107

N.W.2d 820, 86 A.L.R.2d 663] ; *Witschger* v. *Kamages* (1949) 275 App.Div. 1053 [92 N.Y.S.2d 165].)

*Beck* v. *F. W. Woolworth Co.* (D.C.N.D.Iowa 1953) 111 F.Supp. 824, does not hold to the contrary. There the court recognized the exception to the general rule but held that the exception was not applicable because the tenant had no right to remove the improvements at any time. (Cf. *Oakland* v. *Albers Bros. Milling Co.*, 43 Cal.App. 191 [184 P. 868].)

These cases are based on the theory that where the tenant is authorized by the lease to construct improvements upon the property, the tenant has the ability to control how large the tax bill will be. As the size of this bill is so uncertain, the landlord could not have considered it in setting the rent, and the amount of his net rent will be at the tenant's discretion if the landlord is required to pay the taxes on the improvements. (See *Spoor-Lasher Co.* v. *Newburgh Gas & Oil Co.* (1935) 245 App. Div. 329 [280 N.Y.S. 587, 588].) On this basis alone, several old cases held that as between the landlord and tenant, the latter was liable, in all cases, for increased taxes caused by improvements. (See *Watson* v. *Home* (K.B. 1827) 108 Eng. Rep. 730; *Yeo* v. *Leman* (K.B. 1795) 93 Eng.Rep. 1120.) In more recent cases, however, the courts have held that it is not unfair to impose this tax burden upon the landlord if he receives the corresponding benefit of obtaining the improvements for himself at the end of the term. Where this *quid pro quo* does not exist, however, as where the tenant may remove the improvements or where they will be of no value to the landlord in any event (see *Smith* v. *Sugar Creek Coal Co.* (1931) 110 W.Va. 553 [158 S.E. 903]), then it is clearly unfair to hold the landlord for these taxes.

This exception to the general rule is sound, and should be followed in California. Under this exception, the tenant here, as between it and its landlords, is liable for the tax increase caused by the improvements it erected, because the improvements were removable by the tenant during the term of the lease.

The tenant seeks to escape the application of this exception to the general rule by pointing out that here the tenant, apparently, had no right to remove the improvements at the *end* of the term, but only *during* the term. It is true that there seems to be no case containing the somewhat peculiar removal provision we have here, apparently giving the tenant the right to remove during the term but not within a reasonable time after the end

of the term. This is not a material distinction, however, for the tenant still has the legal ability to deprive the landlords of the improvements upon which the taxes must be paid. The purpose of this removal provision appears to be to insure that the tenant removes its improvements (if it wishes to) and vacates the premises on the day the lease expires. It does not restrict the tenant's right to remove the improvements, it only limits the time in which such removal must be completed.

The tenant also urges that the improvements are "permanent in nature" and will probably be left on the property when the lease expires. There is no finding and no evidence to support such a conclusion. The facts seem to indicate the contrary. The fence and the signs would seem to be removable without exorbitant cost. The building and lath house were "bolted down," and probably could be profitably removed or salvaged. Moreover, this approach is inconsistent with the above authorities from other states, not one of which discusses the likelihood of *actual* removal as opposed to the *legal right* to remove. Many of the cases involved improvements at least as bulky and difficult to remove as those involved here. (See, e.g., *Kentucky Farm & Cattle Co.* v. *Williams, supra* (D.C.E.D. Ky. 1956) 140 F.Supp. 449 (large barns) ; *Callahan* v. *Broadway Nat. Bank, supra* (1934) 286 Mass. 473 [190 N.E. 792] (bank vaults which could not be removed without destroying the vaults or some part of the building) ; *Phinney* v. *Foster, supra* (1905) 189 Mass. 182 [75 N.E. 103] (buildings) ; *Wycoff* v. *Gavriloff Motors, Inc., supra* (1961) 362 Mich. 582 [107 N.W.2d 820, 86 A.L.R.2d 663] (small sales office and a large building) ; *La Paul* v. *Heywood, supra* (1911) 113 Minn. 376 [129 N.W. 763, 32 L.R.A. N.S. 368, Ann.Cas. 1912A 274] (two-story building).)

The tenant should not be able to avoid liability by proving that it is "unlikely" that he will remove the improvements. If the landlord is to be held subject to the tenant's uncontrolled discretion to increase the tax burden, he should have no less than a legal guaranty in the lease that the improvements will remain on the property when the lease term terminates. Even if it is probable that the tenant will find little or no profit in removing the improvements, he still might use his right to remove them (thereby depriving the landlord of their use) as a bargaining factor in negotiating for a new lease. (Cf. *Leach* v. *Goode* (1854) 19 Mo. 501 (tenant held liable for

taxes because landlord was obliged to pay him for the improvements when the lease terminated).)

The judgment is reversed and the case is remanded for a new trial.[2]

Traynor, C. J., McComb, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.

---

[2]The tenant makes passing reference to the fact that the trial court excluded, under the parole evidence rule, evidence of some oral discussion of the tax problem which took place while the parties were negotiating the lease. In the event of a reversal, the tenant urges us to pass on the propriety of that ruling, for the guidance of the trial court on the retrial. Neither party has briefed this issue. It would be improper for us to pass upon this issue now.