428 A.2d 161

Stella NESLEY,

v.

ROCKWOOD SPRING WATER COMPANY, INC., Appellant.

Superior Court of Pennsylvania.

Argued June 10, 1980.

Filed April 3, 1981.

508

Timothy F. Hennessey, Pottstown, for appellant.

Lawrence Sager, Pottstown, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

CAVANAUGH, Judge:

In this action, the surviving lessor, Mrs. Stella Nesley, filed a suit in assumpsit against the lessee, the Rockwood Spring Water Company, Inc., to recover $3,194.00 in taxes paid by the lessor from 1969–1975. These taxes resulted from an increase in the assessment of the Nesley property due to the company's construction of various improvements on the property. The case proceeded to compulsory arbitration and the arbitrators awarded appellee $3,194.00. The lessee appealed this judgment to the Court of Common Pleas. The trial court, sitting without a jury found in favor of the lessee, Rockwood Spring Water Company, Inc. The lessor filed exceptions and after oral argument, the lower court, in an order signed by Judge Stively, who had been the trial judge, reversed the finding against the lessor and entered a judgment against the Rockwood Spring Water Company, Inc. for $3,194.00.

The lessee now appeals from that order. The issue is whether the post trial court was correct in reversing the verdict of the trial judge and entering judgment against the appellee.

On April 17, 1946, John and Stella Nesley entered into a lease with Francis W. Hennessey and Frank Slanek. In

1950 a new lease was negotiated between the Nesleys and Francis W. Hennessey, trading as Rockwood Spring Water Company, Inc.[1] The major change in this second lease was that it extended the term of the original lease to ninety-nine years. Neither of these leases contained clauses delineating any tax responsibility.

The lease demised a seventeen acre portion of the appellee's sixty-two acre tract for a term of ninety-nine years. The appellant was given the right to remove "any water on the premises in any amount." He was to pay $.0025 on each gallon of the bottled water sold. This payment was the annual rent.

As water sales increased so did rental payments; from $225.00 in 1946 to $2,050.00 in 1976. However, the percentage on each sale remained constant throughout the lease term.

The appellant was also given the right to construct improvements on the property and to remove any such improvements at the termination of the lease. The improvements clause read as follows:

Lessee ... will be privileged to erect any building or buildings necessary or useful in the removal or processing of the water for commercial uses and that said buildings so erected shall, at the term of the lease or any extension thereof, be removed by the Lessee, his successors, heirs or assigns, without damage to the property of the Lessors, their heirs or assigns.

Since 1946, pursuant to this clause, the appellant constructed certain buildings and other improvements on the leased premises at his own expense. The appellant has never paid any taxes on the demised land or on the improvements. From 1946, the inception date of the first lease, until approximately 1962 the appellee paid the taxes on the

---

1. When the complaint was filed, Stella Nesley owned the premises as surviving tenant by the entireties. The Rockwood Spring Water Company had succeeded Francis W. Hennessey, deceased, as lessee.

assessed property.[2] It should be noted that appellee's entire property was assessed as a unit, and therefore, no apportionment of taxes on the leased portion as opposed to taxes on the nonleased portion of the property appeared on the tax records.

■ From 1969 until 1975 when the complaint was filed, the appellee paid all of the property taxes. The parties stipulated that during these years, appellee paid $3,194.16 resulting from the increased assessment because of the construction of the appellant's improvements. The general rule is that, in the absence of an agreement to the contrary, the lessor is responsible for the taxes assessed against the demised premises. *Kitchen v. Smith*, 101 Pa. 452 (1882); *Flory v. Heller*, 1 Monaghan 478 (1888); *LaPaul v. Heywood*, 113 Minn. 376, 129 N.W. 763 (1911).

■ If on the other hand, the lessee constructs improvements on the land which are removable or which will be of no substantial benefit to the lessor, the lessee is ordinarily liable for the increased taxes resulting from the improvements. *Flory v. Heller, supra; LePaul v. Heywood, supra; Wycoff v. Gavriloff Motors, Inc.*, 362 Mich. 582, 107 N.W.2d 820 (1961); *Lawrence v. F. W. Woolworth Company*, 63 Cal.2d 119, 45 Cal.Rptr. 140, 403 P.2d 396 (1965).

■ However, the lessor will generally be held liable for the increased tax burden resulting from the improvements if they are to become his property at the termination of the lease, *Beck v. F. W. Woolworth Company*, 111 F.Supp. 824 (1953, D.C.Iowa); *Oakland v. Albert Albers Brothers Mill Company*, 43 Cal.App. 191, 184 P. 868 (1919).

The appellant does not challenge this statement of the law. Rather, it argues that the parties had an understanding that the lessor would assume the liability for *all* property taxes, including those resulting from the appellee's

**2.** In 1962 the taxes on the leased premises were mistakenly charged to an adjoining property owner who paid them until 1968 when the mistake was discovered. Those taxes are not at issue here as no reimbursement was sought from the appellee.

improvements throughout the duration of this ninety-nine year lease. According to the appellant, the lessor's payment of all property taxes from 1946–1962 and from 1969–1975 amounted to a construction of the lease evidencing this understanding.

■ We agree with the post verdict court in holding that the appellee's payment of these taxes did not amount to a construction of the lease imposing the increased tax obligation on the lessor.

In *Flory v. Heller, supra*, the Pennsylvania Supreme Court addressed the issue of a lessee's responsibility for increased taxes resulting from the construction of improvements on leased property. The lease provisions there were similar to those in the instant case. The parties entered a thirty-year lease for a tract of farm land. The lessee had the right to quarry the land and remove any slate found on it. He agreed to make a certain quantity of slate per year. His rent was based on a royalty upon the slate quarried each year. The lease provided that any machinery, fixtures or improvements placed on the land could be removed by the lessee. No provision was included on the parties' obligations for property taxes.

The lessor paid the taxes assessed against the land in its original condition. The lessee was also assessed for the quarry improvements and machinery. However, the lessee attempted to defalcate these taxes against the lessor's claim for rent. The court rejected this attempt and held that in the absence of an agreement to the contrary the lessor is liable only for those taxes upon the original value of the property. The court indicated that even if there is a covenant in the lease requiring the lessor to pay taxes, this covenant must clearly express that these taxes include those on the improvements. Absent this clear expression, the lessor will be responsible only for the taxes on the original value of the property. *Flory* at 480. It is evident that the Supreme Court established a standard demanding a clear showing that a lessor intends to assume the responsibility for taxes resulting from a lessee's addition of removable improvements.

The appellant attempts to distinguish *Flory, supra,* from the instant case by asserting that the lessor there disputed the tax assessment immediately upon its imposition while here the appellee waited some twenty years before disputing these taxes. However, it must be noted that the lessor in *Flory* was put on immediate notice by the lessee's attempt to deduct these separately assessed taxes from his rental payments. Here there is no evidence of such notice. As indicated, the parties did stipulate that the appellee's property was assessed as a unit. Therefore, when the appellee received his tax statements there was not an apportionment of taxes on the leased portion and taxes on the nonleased portion. The appellant, therefore, had the burden to show that the appellee had notice of these increased taxes and that he knowingly assumed the responsibility for them. He failed to meet this burden. The appellant never introduced any evidence showing that the appellee or her deceased husband ever knew that their taxes were increased as a direct result of the lessee's improvements.

The appellant further argues that the appellee's failure to shift the payment of taxes to it in 1950, when the new lease was negotiated, after the appellees had been paying the tax since 1946, clearly indicated an agreement by the lessors that they would continue to pay the increased taxes resulting from the improvements. However, not only did the appellant fail to show notice to the lessor, it also failed to show that appellee's taxes had even increased between 1946 and 1950.

In light of the Supreme Court's decision in *Flory, supra,* the trial court was correct in ruling that the appellee's conduct did not amount to a construction of the lease by the appellee.

The appellant next contends that while he does have the right to remove the improvements the appellee nonetheless has received and continues to receive substantial benefit from them and is therefore liable for the taxes on them.

In most of the cases dealing with the benefit rule issue, the improvements in question were not removable and the benefit to the lessor was clear. It has been held, for example, that it is not unfair to impose the tax burden resulting from a lessee's improvements upon the landlord who is to receive the corresponding benefit of obtaining the improvements at the end of the lease term. *Oakland v. Albers Brothers Mill Company*, 43 Cal.App. 191, 184 P. 868 (1919). *Also see: Lawrence v. F. W. Woolworth Company, supra.*

This however, is not the situation in the instant case. Here the appellant does have the right to remove the improvements. Nonetheless, it argues that since the purpose of the buildings was to increase the sales capacity and since rental payments were based on the amount of water sold, the lessor directly benefitted from the improvements through increased rental payments. Initially, we note that neither the language of the lease or the imposition of an annual sales quota required the appellant to install any improvements to increase sales capacity. The appellant made a business decision to construct the improvements without any prompting from the appellee.

The lower court was not persuaded by the appellant's testimony which attempted to show that the erection and use of the improvements directly increased the production of the bottled water. The court ruled, however, that even if such a connection could be inferred, the resulting benefit to the lessor would not be substantial enough to shift the tax burden of the improvements.

The appellant cites no case law supporting a finding that the alleged benefit to the appellee is of the quality to shift the tax burden to the appellee. Furthermore, extensive research has disclosed no such case.

In its opinion, the lower court cites *Miller v. Buck Creek Oil Company*, 38 Wyo. 505, 269 P. 43 (1921) as an example of the type of financial benefit resulting from a lessee's efforts which has been taxed to the lessor. There the lessor received twelve and a half percent or one-eighth of the net returns from the sales of petroleum discovered and produced

by the lessee on the demised land. Unlike the instant case, however, the taxes in question there were on the lessor's royalty interests. The court treated the lessor as the owner of the oil which he received as a royalty and held that in the absence of a stipulation to the contrary the tax should be borne by the parties in proportion to their respective interests in the production. Therefore, the lessee in *Miller, supra,* was also liable to pay the property taxes on his royalty interests in the sales.

Unlike *Miller, supra,* the lessee was not required to pay any set amount of royalty to the lessor. Here the lessor only received $.0025 per gallon on all the water sold regardless of the increase in selling price and regardless of the quantity of water sold. This percentage figure was to remain constant over the ninety-nine years of the lease and this amount was the only rent paid to the lessor for the seventeen acres which were leased to the appellant.

Considering all these factors, in addition to the fact that the appellant constructed the improvements on its own initiative and maintained the right to remove them, we agree with the lower court that even if the improvements did increase the sales capacity of the appellant, the financial benefit to the lessor is not the type of benefit which would justify shifting the tax burden from the improvements to the lessor. We therefore affirm the lower court's order.