ROBAN REALTY, INC. *v.* DAVID H. FAILE ET AL.
(4912)

DUPONT, C. J., BIELUCH and NORCOTT, Js.

Argued September 29, 1987—decision released March 8, 1988

*Hugh B. Gordon,* for the appellant (plaintiff).

*W. Wilson Keithline,* for the appellee (named defendant).

*William B. Barnes,* for the appellees (defendant Linda Sabol et al.).

DUPONT, C. J. A state trial referee, acting as the trial court, rendered judgment, in this declaratory judgment action, for the defendants, the lessees of certain commercial realty. The plaintiff lessor sought to hold the original lessee, the defendant David Faile, primarily liable for the amount by which the property tax on the realty had increased during the term of the lease. The plaintiff also sought the same recovery from the defendants Kimberly Avenue Dairy Queen, Inc. (KADQ), and Linda Sabol, assignees of the lease.[1]

[1] The defendant Faile filed a cross complaint against the defendants KADQ and Sabol seeking indemnification; the defendants KADQ and Sabol cross complained against Faile, also seeking indemnification. Judgment was

The increase in the property tax falls into two categories. One increase relates to the taxes on the assessment for improvements made by the lessees, and the other to taxes on the increase in the assessment of the original leased realty.

The parties submitted the case to the court on a stipulation of facts, exhibits and briefs, proferring no testimony. One exhibit was the lease between the plaintiff and Faile the original lessee. Article 16 of the lease relates to tax increases.[2]

rendered for Faile on the cross complaint of KADQ and Sabol, and for KADQ and Sabol on the cross complaint of Faile. These judgments are not involved in this appeal.

[2] Article 16 of the lease provides: "TAX INCREASES. (a) For the purposes hereof 'base tax year' is the first full fiscal real estate tax year occurring during the term of this Lease. Lessee agrees to pay to Lessor the amount by which (i) the annual real estate taxes that are levied or assessed against the demised premises in each fiscal tax year beginning with the first fiscal tax year after the base tax year exceed (ii) the real estate taxes levied or assessed for the base tax year.

"(b) Any amount due to Lessor under the provisions of this Article shall be paid upon rendition of the bill therefor, and Lessor shall, at the time of the rendition of such bill, submit to Lessee the bill received from the taxing authorities or a photostat thereof. Any tax increase shall be apportioned so that Lessee shall pay or receive his proportionate share of only that portion of the tax increase for such taxed year which corresponds with that portion of the tax year as falls within the term. The taxes for any fiscal tax year in respect to which Lessee is obligated to pay an increase in taxes shall be the amount of such taxes as finally determined to be legally payable by legal proceedings or otherwise. In no event shall Lessee be obligated to pay any interest or penalties imposed upon Lessor for late payment or otherwise.

"(c) Notwithstanding the foregoing provisions of this Article, the maximum amount which Lessee shall be obligated to pay as additional rent hereunder shall not, during any one year of the term of this Lease, exceed an amount equal to ten (10%) per cent of the annual rent provided in Article 3 hereof.

"(d) Lessee at his own cost and expense, may undertake, by appropriate proceedings, to review any tax assessments for any fiscal tax year occurring after the base tax year. Any documents required to enable Lessee to prosecute any such proceedings such be executed and delivered by Lessor on reasonable demand. Lessee shall, however, indemnify Lessor for any cost and other charges directed to be paid in or by any such proceedings. If Lessor shall receive any tax refund for any tax year as a result of any

The plaintiff, Roban Realty, Inc. (Roban), is a corporation engaged in the purchase, sale and management of commercial real estate. At the time the lease in question was entered into in 1965, the premises were improved solely by a brick garage building. Between 1966 and 1970, Faile constructed additional improvements[3] on the leased property. These consisted of a one-story brick building used to house a Dairy Queen ice cream business, a metal shed, fencing, and paving. Certain improvements were also made to the interior of the original garage building. On August 1, 1977, Faile assigned[4] his interest in the lease to the defendant KADQ, and on February 9, 1978, KADQ assigned its interest in the lease to the defendant Sabol. The plaintiff is seeking payment for tax increases for the period 1972 through 1983 attributable to tenant improvements on the leased property, and for tax increases on the original property from 1972 through 1979 pursuant to the tax escalation provision in Article 16 of the lease.

The trial court found that no provision in the lease provided that the defendants would pay property tax

proceedings undertaken by Lessee pursuant to this Article, Lessor shall reimburse Lessee for any reasonable expenses incurred by Lessee in obtaining such tax refund, including reasonable attorney's fees."

[3] Article 7 of the lease provides in pertinent part: "ALTERNATION AND IMPROVEMENTS. Lessee, at his own expense, may from time to time, make any alterations, additions and improvements, including but not limited to the construction of buildings, in and to the premises which he may deem necessary or suitable, but he shall make them in a good and workmanlike manner, without impairing the structural soundness of the building. All salvage shall belong to Lessee but all permanent additions made to the premises shall belong to Lessor and shall become part of the premises subject to this Lease, provided, however, that during the term of this Lease or any extension thereof, Lessee may construct, reconstruct, demolish, alter or change any such permanent additions made by Lessee."

[4] Article 11 of the lease provides: "ASSIGNMENT. Lessee may use the premises for any lawful purpose or may vacate or sub-let all or any part of them, or assign this Lease; provided, however, that in any sub-let or assignment of said premises, Lessee shall remain primarily liable under this Lease unless, of course, the Lessor consents in writing to relieving Lessee of liability and responsibility hereunder."

on increases caused by improvements constructed by them and that the parties had expressed no intention as to such taxes. Since there was no express intention that these taxes would be paid by the lessees, and since the improvements under the lease immediately became the property of the lessor, the court held that the defendants did not owe the plaintiff any additional rent for tax increases resulting from tenant improvements.[5]

The trial court further found that the language of article 16 of the lease provided that the plaintiff had to invoice the defendants in a timely manner, with a tax bill or a photocopy of a tax bill as a condition precedent to any obligation of the defendants to pay any amount to the plaintiff for an increase in property tax relating to the originally leased property. The court found that no invoices, accompanied by tax bills or photocopies of tax bills, were ever sent to the defendants within the time required by the lease, and therefore held that the defendants did not owe the plaintiff any sum as additional rent for the increase in property tax relating to the originally leased property.

Our review of the trial court's conclusions is limited under Practice Book § 4061 to determining whether those conclusions are clearly erroneous. *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427–28, 488 A.2d 1290 (1985). A trial court's construction of a written agreement is an issue of fact subject to that limited standard of appellate review. *Sweeny* v. *Sweeny,* 9 Conn. App. 498, 519 A.2d 1237 (1987); *Lavigne* v. *Lavigne,* supra.

---

[5] Although the court, in effect, found that Article 16 of the lease did not apply to tax increases due to tenant improvements, the defendants during oral argument in this court conceded that the Article applied to both tax increases on the original leased realty and tax increases on the improvements. Even if Article 16 applies to both types of increases in property taxes, the court's finding that the plaintiff had failed to submit invoices in a timely manner would prevent the plaintiff from recovery for either category of tax increase. Furthermore, the concession of the defendants does not require this court to adopt it as binding.

The plaintiff first claims that the trial court erred by finding that the lessees are not liable under the lease for increases in real estate tax due to improvements constructed by them on the leased premises.

The trial court noted in its memorandum of decision that although article 16 of the lease required the lessees to reimburse the lessor for tax increases on the property as originally leased, the parties had failed to incorporate a provision requiring payment by the lessees for tax increases due to tenant improvements. The trial court pointed out that the plaintiff is a corporation dealing in the purchase, sale and management of real estate, raising the inference that had the plaintiff intended such a provision to have been included, it would have done so. The trial court also took note of article 15 of the lease, which states: "All *taxes,* assessments and charges *on the land or improvements* and obligations secured by mortgage or other lien upon the premises shall be paid by lessor when due." (Emphasis added.) These considerations convinced the trial court that the lease does not manifest an intention that the lessees should be liable for tax increases due to tenant improvements.[6]

The court's finding that there was no contractual intent that the lessees pay tax increases on improvements made by them led the court to conclude that there could, therefore, be no liability to pay for the same. The finding of a lack of intent is as much a finding of fact as a finding relating to the intent itself. See

[6] The plaintiff argues that the following common law rule governs this case: " 'Where a lease is silent as to the payment of taxes, improvements which are removable by the tenant at the end of the term are taxable to him, and not to the landlord.' " *Lawrence* v. *F.W. Woolworth Co.,* 63 Cal. 2d 119, 121, 403 P.2d 396, 45 Cal. Rptr. 140 (1965), and cases cited therein. This rule is inapposite to the present case. The improvements under the terms of the lease were not removable by the tenant and became the property of the landlord.

*Cassidy* v. *Bonitatibus,* 5 Conn. App. 240, 243, 497 A.2d 1018 (1985). The scope of the terms of a contract are questions of fact to be determined by the trier. *Harry Skolnick & Sons* v. *Heyman,* 7 Conn. App. 175, 178, 508 A.2d 64, cert. denied, 200 Conn. 803, 510 A.2d 191 (1986). The trial court here determined that the scope of article 16 did not include the taxation of improvements made to the realty. This conclusion is one of fact and is not clearly erroneous.

The plaintiff's second claim is that the trial court erred in determining that the defendants are not liable for tax escalation payments pursuant to article 16 of the lease. Article 16 (a) requires the lessee to pay any tax increases on the leased property, up to $900 per year, in excess of the real estate tax existing in the first full fiscal real estate tax year during the term of the lease. Article 16 (b) provides: "Any amount due to Lessor under the provisions of [article 16] shall be paid upon rendition of the bill therefor, and Lessor shall, at the time of rendition of such bill, submit to Lessee the bill received from the taxing authorities or a photostat thereof." In addition, article 16 (d) entitles the lessee to seek review of any tax assessment to the board of tax review and an appeal to the courts: "Lessee at his own cost and expense, may undertake, by appropriate proceedings, to review any tax assessments for any fiscal tax year occurring after the base tax year."

The trial court found that the plaintiff should have provided invoices and tax bills to the defendants of the tax increases, within the time frame necessary for the defendants to exercise their right under the contract to seek review of tax assessments. The receipt of such invoices and bills was a condition precedent to the obligation of the defendants to pay for tax increases because that was the intent of the parties as expressed in article 16. See *Strimiska* v. *Yates,* 158 Conn. 179, 185–86, 257 A.2d 814 (1969).

The trial court also concluded that the lease provided the lessees the right to seek a review of any increase in taxes by the board of tax review, and that such a right could only be pursued within a finite time frame. See General Statutes §§ 12-110, 12-111, 12-112 and 12-118. The trial court further concluded that, in order for the defendant lessees to pursue such rights, the lessor was obligated to furnish tax invoices and tax bills promptly. Since the lessor did not do so, the trial court held that the defendants were not liable for the increase in property taxes as claimed by the plaintiff.

These conclusions were based on the facts contained in the stipulation of the parties and based on the lease itself. They are not clearly erroneous.

There is no error.

In this opinion the other judges concurred.