## Starer v. Wildman Arms of Swarthmore, Inc.

*Murray S. Eckell*, for plaintiffs.
*Donna M. Jacobs*, for defendants.

JEROME, *J.*, December 16, 1983—After a non-jury trial by stipulation and consideration of the briefs of respective counsel, the court makes the following findings of fact:

1. Plaintiffs Larry J. and Harriet Starer are lessees of Unit Nos. 207 and 208 of the Wildman Arms, now known as Strath Haven Condominiums, in Swarthmore, Delaware County, Pa.

2. Defendants, lessors of above Units 207 and 208, are Wildman Arms of Swarthmore, Inc., t/a Strath Haven Condominiums, and Delaware Valley Realty, Inc.

3. On July 1, 1975, plaintiffs entered into a lease agreement with defendant Wildman Arms of Swarthmore, Inc., for the lease of two apartments, Units 207 and 208, for a term of five years commencing on the first day of July, 1975, with two renewal options for additional leasehold periods of five years each.

4. The lease agreement and amendments thereto were prepared by defendant, Wildman Arms of Swarthmore, Inc.

5. Plaintiffs exercised the lease renewal option

for an additional five-year period with an option to renew for an additional five-year period, i.e., until June 30, 1990.

6. On September 1, 1981, plaintiffs' lease was assigned to defendant Delaware Valley Realty, Inc.

7. Paragraph 29 of the lease provides as follows:

"Lessee further agrees to pay in addition to the rent herein reserved, upon presentation of bills therefor by Lessor to Lessee, any increase in real estate taxes imposed during the term of this lease on the demised premises and/or the building on which the demised premises is a part in excess of and above those assessed or imposed in the year 1972. By the foregoing terms, Lessee agrees Lessor shall have the right to immediate indemnification and reimbursement from Lessee of any increase in taxes, be it a millage increase or an increase in the assessed valuation of the property known as Wildman Arms, Inc. of Swarthmore. Said tax increase shall be borne pro rata by Lessee, that is, Lessee shall be responsible for that portion of the tax increase which is equivalent to the ratio the unit or units occupied by Lessee bear to the total of 265 units in the entire building."

8. Plaintiffs' taxes for the years 1975-1981 were calculated by taking the 1972 tax figures as a base and subtracting these from the current taxes then dividing by 265 (the number of units).

9. The tax bills for plaintiffs' units were as follows:

| Year | Tax | Increase/Decrease |
|------|--------|-------------------|
| 1976 | 432.79 | |
| 1977 | 541.41 | 25.1 |
| 1978 | 633.28 | 14.5 |
| 1979 | 456.30 | (38.8) |
| 1980 | 448.76 | ( 1.7) |
| 1981 | 453.10 | .7 |

10. On or about 1981, defendant Wildman Arms of Swarthmore, Inc., caused the Wildman Arms Apartments to be converted into condominium units pursuant to the Uniform Condominium Act, 68 Pa.C.S.A. §3101 et seq.

11. As a result of the conversion of the building from apartments to condominiums, the County of Delaware, the Borough of Swarthmore and the Wallingford-Swarthmore School District assessed plaintiffs' units separately at their fair market value as condominum units for the 1982 tax year.

12. Plaintiffs' rent estate taxes increased from the pre-conversion figure of $453.10 to the post conversion figure of $3,062.29 in 1982.

13. Plaintiffs have refused to pay the increase of the real estate taxes based on the condominium conversion.

14. Plaintiffs have continued to pay real estate taxes based on their units as pre-conversion units.

15. A controversy has arisen between plaintiffs and defendants relative to their respective rights and duties regarding the real estate taxes under the lease.

## DISCUSSION

This action for a declaratory judgment was filed on January 18, 1983, for the purpose of determining the rights and liabilities under a lease between plaintiff lessees Larry J. and Harriet Starer, and defendant lessors Wildman Arms of Swarthmore, Inc., t/a Strath Haven Condominiums and Delaware Valley Realty, Inc. Pleadings filed to date include an action for declaratory judgment, an amended action for declaratory judgment, defendants' answer and counterclaim and plaintiffs' answer to defendants' counterclaim. The parties are in accord regarding

the above stated material facts upon which this action is based and agreed to have the issues of law decided on briefs alone.

The contractual obligation entered into by the parties is for the lease of Units 207 and 208 which are defined in the lease agreement as residential apartments. Pursuant to Paragraph 29 of the lease, plaintiffs are responsible for any increase in real estate taxes imposed during the term of the lease in excess of those assessed on their proportionate share in 1972. In 1981, the Wildman Arms were converted into condominium units pursuant to the Uniform Condominium Act. As a result of the conversion, the County of Delaware, the Borough of Swarthmore and the Wallingford-Swarthmore School District assessed plaintiffs' units separately at their fair market value as condominium units for the 1982 tax year. Plaintiffs have continued to pay on their units as apartments and refuse to pay the increased taxes based upon the new assessment of their premises as condominium units.

The main issue to be decided is whether plaintiffs should pay taxes on the premises they are renting based on the increase as a result of the condominium conversion or based on the former rate as a residential apartment.

The dispute arises based on Provision 29 in the lease agreement wherein plaintiffs agreed to pay any increase in real estate taxes imposed during the term of the lease on the demised premises. Since the demised premises are defined in the lease agreement as residential apartments, and plaintiffs are still renting the premises as apartments, plaintiffs contend that their relationship remains that of landlord and tenant subject to the terms of the original lease. Defendants assert that pursuant to Paragraph 29 of the lease, plaintiffs are clearly required to pay

real estate taxes for their units based upon the taxing authorities assessed valuation of the units.

Although both plaintiffs and defendants agree that Paragraph 29 is unambiguous and their relationship remains that of landlord and tenant, they fail to interpret the contract in the same manner.

In construing a contract, the Pennsylvania Appellate Courts have considered the following principle:

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language . . .

"Where, however, the terms of the agreement are ambiguous and the intent of the parties cannot be ascertained by reference to the writing, the agreement will be construed strictly against the party who prepared the agreement, particularly in the event such party is in a superior bargaining position to the other contracting party. In addition, extrinsic evidence may be introduced to show the common understanding and intent of the parties at the time the contract was entered into." CBS, Inc. v. Capital Cities Communications, 301 Pa. Super. 557; 448 A.2d 48 (1982).

Here, it is obvious that ambiguities have arisen under the contract in light of the condominium conversion. Although it is clear that the plaintiffs were liable for increases in real estate taxes when Wildman Arms was an apartment complex, it is not clear whether they are liable for the increases due to conversion since plaintiffs are operating under the old lease.

Applying the above principles of contract construction to the agreement, it is obvious that the intent of the parties was for the tenants to pay increases in real estate taxes based on the valuation of the premises as an apartment building. The conversion of the apartment building into condominiums was a unilateral extraordinary improvement by the landlord which solely benefited the landlord. Here, the landlord attempts to pass on to the tenant the increased economic liability due to the conversion. It is unreasonable to assume that the parties contemplated such a situation since the plaintiffs renewed their lease before notice of the conversion or intended such a result.

Although there is no case law directly on point, by analogy there is case law which would indicate that increased assessments are prohibited against tenants with respect to improvements made unilaterally by a landlord which inure solely to the benefit of the landlord.

In Nesley v. Rockwood Spring Water Co., 285 Pa. Super. 507, 428 A.2d 161 (1981), the lessor brought an action against the lessee to recover certain taxes paid by the lessor as a result of an increase in the assessment of lessor's property due to the lessee's construction of various improvements on the property. In Nesley, the Superior Court cited the Pennsylvania case of Flory v. Heller, 1 Monaghan 478 (1888) which held that the lessor was not responsible for increased taxes arising out of increased assessments for improvements made by the lessee and that the lessor is liable only for those taxes upon the original value of the property. Flory further held that if there is a covenant in the lease requiring lessor to pay taxes, this convenant must clearly express that these taxes include those on improvements.

Nesley, in applying the Flory criteria, held that the lessor's payment of all property taxes did not amount to a construction of the lease imposing increased tax obligation on the lessor resulting from improvements to the property made by the lessee, absent a showing that the lessor had notice of these increased taxes and knowingly assumed responsibility for them.

Conversely, there is no justification for imposing increased tax obligations on a lessee resulting from improvements made to lessor's property which inure solely to the benefit of the lessor. Although here there is a clause in the lease agreeing to pay for the increase in real estate taxes, the tenants' obligation to pay taxes was founded on the valuation of the structure as an apartment building and not on the basis of a condominium. Accordingly, we find that the lessor is liable only for those taxes based upon the original value of the property.

Since we have determined that the plaintiffs are obligated only to pay real estate based upon their units as apartments, the proper rate of real estate taxes to be assessed against them for the balance of the lease must be determined.

Plaintiffs contend that the taxes on the units should be calculated for the period from 1982 through 1990 (if the second lease option is exercised by plaintiffs) by ascertaining the average percent of tax increase over the terms of the lease from 1975 to conversion and that percent of increase applied to the bill during each year after the conversion to the end of the lease. Based on figures agreed to by the parties, plaintiffs calculate that plaintiffs' tax should increase by 0.9 percent each year over the preceding year's real estate tax.

Defendants suggest that plaintiffs' real estate taxes subsequent to 1981 and for the balance of the

term of their lease should be calculated by taking ten percent of the actual sale price of the premises formally known as Wildman Arms of Swarthmore, Inc., as an appropriate valuation for the 1982 tax year times the millage rates for 1982 with taxes attributable to plaintiffs' units calculated on the basis of 1/265 of this figure for each unit occupied by the plaintiffs. Thereafter, all tax increases and decreases where appropriate, for which the plaintiffs would be responsible under the terms of their lease, would be based upon actual millage rate fluctuations for the years subsequent to 1982. Since defendants have failed to proffer any facts or stipulation as to sale price, defendants' equation is rendered nugatory as a viable solution.

We propose the following solution as one most closely in keeping with the fluctuation in millage rates. Since 0.9 percent only reflects the average increase over the past several years, it would be more accurate to multiply the current yearly millage rate times the 1981 assessment of Wildman Arms Apartments and divide by the 265 units. Per Paragraph 29, the lessee would pay any increase in real estate taxes in excess of those imposed in 1972. The 1972 tax figure would be subtracted from the assessment imposed on each unit in each year subsequent to 1981. The resulting figure would be paid to the landlord as the yearly real estate taxes above those assessed in 1972 per Paragraph 29 of the lease.

In light of the above, the court concludes that:

1. The units presently occupied by plaintiffs are leasehold units and not condominium units.

2. The lease agreement dated July 1, 1975, for the rental of an apartment unit is still in full force and effect.

3. Any increase in the assessment of the real estate which is the subject of this litigation results

solely from defendants' conversion of the Wildman Arms of Swarthmore, Inc., to condominium units.

4. Any ambiguities in the lease agreement are construed against the lessor.

5. The condominium conversion of the demised premises constituted a unilateral improvement thereon which substantially enhanced the value of the property for the benefit of the lessor only.

6. The duty to pay the increased assessment above and beyond that previously assessed upon the leasehold units as apartments is the lessors or lessors' successor in interest.

7. The lease remains in full force and effect subject to the terms and conditions set forth therein and interpreted in the above discussion.

8. The taxes on Units 207 and 208 should be determined by multiplying the yearly millage rate (i.e. in 1982 the 1982 millage rate, in 1983 the 1983 millage rate, etc.) times the 1981 assessment of Wildman Arms Apartments and dividing that figure by 265. The 1972 tax on each unit will be subtracted from the above calculated figure. The resulting figure reflects the per unit increase which should be paid by the plaintiff lessees to the defendant landlords.

9. Since plaintiffs failed to articulate any proof or reasons as to why counsel fees and costs should be awarded, said request is denied.

We therefore enter the following.

## DECREE NISI

And now, this December 16, 1983, it is hereby declared that plaintiffs are not liable for the payment of the increased taxes attributable to the taxing authorities' change in the assessment of plaintiffs' units as a result of the condominium conversion of

Wildman Arms Apartments. Plaintiffs shall continue to pay any increases in the real estate taxes assessed upon their units as apartments.

The increase in the taxes shall be calculated in the following manner:

1. Multiply the current yearly millage rate times the 1981 assessment of Wildman Arms Apartments and divide that figure by 265.

2. Subtract the 1972 tax assessment on each unit from the above calculated figure.

3. Resulting figure reflects the per unit increase which shall be paid by plaintiffs to defendant landlords.